### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNIFIED SCHOOL DISTRICT NO. 259,<br>Sedgwick County, State of Kansas<br><br>Plaintiff,<br><br>vs.<br><br>KANSAS ADVOCACY & PROTECTIVE<br>SERVICES, INC.<br><br>Defendant. | Case No. 04-1279 JTM |

### COMPLAINT

COMES NOW, Plaintiff Unified School District No. 259, by and through its attorneys Thomas R. Powell and Sarah J. Loquist of Hinkle Elkouri Law Firm L.L.C. and for its cause of action against Defendant Kansas Advocacy & Protective Services, Inc. alleges and states as follows:

1. Plaintiff Unified School District No. 259 ("U.S.D. 259") is a unified school district established by the laws of the State of Kansas. Plaintiff's principal place of business is 201 N. Water Street, Wichita, Sedgwick County, Kansas 67202.

2. Defendant Kansas Advocacy & Protective Services, Inc. ("KAPS") is a non-profit corporation organized and existing under the laws of the State of Kansas, engaged in the business of advocating for the rights of the disabled. Defendant's principal place of business is 3745 SW Wanamaker Road, Topeka, Kansas 66610. Defendant may be served by serving Rocky Nichols, Executive Director and Resident Agent, at the defendant's principal place of business.

3. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining an actual controversy between the parties, as more fully appears below.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
*UNIFIED SCHOOL DISTRICT NO. 259 v. KANSAS ADVOCACY & PROTECTIVE SERVICES, INC.*
COMPLAINT
PAGE 2

4. Jurisdiction of this action is based upon 28 U.S.C. § 1331, seeking an interpretation of 20 U.S.C. § 1232g, 20 U.S.C. § 1417(c), 42 U.S.C. §§ 15041-15045, 42 U.S.C. §§ 10801, *et seq.*, and 29 U.S.C. § 794e. While there is currently no amount in controversy between Plaintiff and Defendant, Plaintiff is subject to federal regulations which provide for loss of federal funding for the unauthorized disclosure of personally identifiable information of students as more fully set forth below. *See* 20 U.S.C. § 1232g(f); 34 C.F.R. § 99.67.

5. On May 20, 2004, KAPS submitted a letter to U.S.D. 259 seeking student information pursuant to the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. §§ 15041-15045, the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. §§ 10801, *et seq.*, and the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e. (A true and correct copy of said letter is attached hereto and incorporated herein by reference as Exhibit A.) In this letter, KAPS asserted that these statutes are applicable to public schools and demanded a response within three (3) days.

6. On May 25, 2004, U.S.D. 259 provided the aggregate information requested, but refused to provide information relating to specific students on the basis that U.S.D. 259 could not provide the information pursuant to the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. (A true and correct copy of U.S.D. 259's response is attached hereto and incorporated herein by reference as Exhibit B.)

7. On June 17, 2004, KAPS submitted another request for very detailed information on the twenty-two (22) special education students who received more than ninety (90) days of

Case 6:04-cv-01279-JTM-KMH   Document 1   Filed 08/24/04   Page 3 of 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
*UNIFIED SCHOOL DISTRICT NO. 259 v. KANSAS ADVOCACY & PROTECTIVE SERVICES, INC.*
COMPLAINT
PAGE 3

homebound services. (A true and correct copy of said letter is attached hereto and incorporated herein by reference as Exhibit C.) KAPS contends that the information can be provided as long as the student's name is not given. However, all of the information requested is personally identifiable information as defined by FERPA and, when taken together, could be used to identify the student. *See* 34 C.F.R. § 99.3. Therefore, U.S.D. 259 cannot provide the requested information to KAPS. (A true and correct copy of U.S.D. 259's response is attached hereto and incorporated herein by reference as Exhibit D.)

8. Furthermore, the information being sought by KAPS all relates to students identified as special education students, their disabilities, and the special education services they receive. Such information is also protected by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1417(c). *See also* 34 C.F.R. §§ 300.560-300.577.

9. The statutes relied upon by KAPS are intended primarily to protect disabled individuals from abuse and neglect. *See* 42 U.S.C. § 15043(a); 42 U.S.C. § 10801. KAPS alleges that these statutes are also applicable to public schools. However, PAIMI defines "facilities" as "includ[ing], but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." 42 U.S.C. § 10802(3). Furthermore, PAIMI defines "individual with mental illness" as an individual with a significant mental illness or emotional impairment who meets one of the following criteria: (1) is an inpatient or resident in a facility rendering care or treatment; (2) is in the process of being admitted to a facility rendering care of treatment; (3) is involuntarily confined in a municipal

detention facility for reasons other than serving a criminal sentence; or (4) lives in a community setting, including their own home. 42 U.S.C. § 10802(4). In addition, the implementing regulations for the DD Act defines "facility" as "any setting that provides care, treatment, services and habilitation, even if only 'as needed' or under a contractual arrangement. Facilities include, but are not limited to the following: Community living arrangements (e.g., group homes, board and care homes, individual residences and apartments), day programs, juvenile detention centers, hospitals, nursing homes, homeless shelters, jails and prisons." 45 C.F.R. § 1386.19. Public schools are not listed as one of the "facilities" covered by the statutes cited by KAPS, all of which have a residential component. Furthermore, U.S.D. 259 has found no case law indicating that schools are subject to the statutes cited by KAPS.

10. FERPA lists certain situations in which the school need not obtain consent prior to the disclosure of personally identifiable information from student records. *See* 20 U.S.C. § 1232g; 34 C.F.R. § 99.31. Disclosure to an advocacy group, such as KAPS, is not one of the listed exceptions.

11. KAPS contends that the statutes it cites, in effect, trump FERPA. Because KAPS believes the statutes it cites are applicable to U.S.D. 259, KAPS could seek injunctive relief to enforce its access to records. However, U.S.D. 259 has found no authority to indicate that the statutes cited by KAPS are controlling, or even that public schools are intended to be covered by said statutes. Given that there is already a federal statutory framework established to address the

Case 6:04-cv-01279-JTM-KMH   Document 1   Filed 08/24/04   Page 5 of 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
*UNIFIED SCHOOL DISTRICT NO. 259 v. KANSAS ADVOCACY & PROTECTIVE SERVICES, INC.*
COMPLAINT
PAGE 5

educational needs of disabled students, *i.e.*, the IDEA, plaintiff contends that Congress did not intend to make the DD Act, PAIMI, or PAIR applicable to school districts as well.

12. If U.S.D. 259 improperly discloses confidential student information to KAPS, one possible penalty is the loss of all U.S.D. 259's federal funding. *See* 20 U.S.C. § 1232g(f); 34 C.F.R. § 99.67. For the 2003-2004 school year, U.S.D. 259 received a total of $57,465,725 in federal funding. U.S.D. 259 will not provide the information requested by KAPS and risk violating the rights of its disabled student population, as well as the forfeiture of the federal funding essential to the delivery of educational services to its students.

13. Due to the parties' disagreement regarding the interpretation of the confidentiality provisions in FERPA and IDEA and regarding the applicability of the DD Act, PAIMI, and PAIR, U.S.D. 259 requests the Court's interpretation whether the DD Act, PAIMI or PAIR applies to public schools and whether U.S.D. 259 should release the information requested by KAPS.

WHEREFORE, for all of the reasons set forth above, Plaintiff U.S.D. 259 respectfully requests (1) that the Court issue an order finding that the DD Act, PAIMI, and PAIR are not applicable to public schools and finding that FERPA and/or IDEA prohibits the release of the information requested by KAPS; and (2) that the Court grant such other and further relief as may be proper.

Wichita, KS designated as place of trial.

Respectfully Submitted,

HINKLE ELKOURI LAW FIRM L.L.C.

By s/ Sarah J. Loquist
   Thomas R. Powell, SC No. 07348
   Sarah J. Loquist, SC No. 18225
   301 North Main
   2000 Epic Center
   Wichita, Kansas 67202-4820
   Telephone: (316) 267-2000
   Facsimile: (316) 264-1556
   E-mail: tpowell@hinklaw.com
   E-mail: sloquist@hinklaw.com
   *Attorneys for Plaintiff Unified School District No. 259*



**KANSAS ADVOCACY & PROTECTIVE SERVICES**
3745 SW Wanamaker Road
Topeka KS 66610
(785) 273-9661
(785) 273-9414 Fax
(877) 776-1541 TDD/Voice
Web site: www.ksadv.org

May 20, 2004

Neil Guthrie, Director
Special Education and Support
Services Division
Wichita Public Schools
201 N. Water
Wichita, KS 67202

Dear Mr. Guthrie,

I am writing to request information relating to the education of children with disabilities in your school district who are homebound or otherwise not receiving instruction in district facilities. I send this request in letter form because I will be out of town for a few days and I have not yet received a response from Diane Gjerstad, whom I contacted on May 14.

Kansas Advocacy & Protective Services (KAPS) is the officially designated protection and advocacy agency providing protection of the civil and legal rights of Kansans with disabilities. KAPS has broad statutory authority to investigate incidents of abuse or neglect of individuals with developmental disabilities, mental illness, or other disabilities pursuant to the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. § 15041-15045; the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 et seq.; and the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e.

KAPS is authorized to investigate incidents of abuse or neglect of individuals with disabilities if the incidents are reported to the system or if KAPS has probable cause to believe the incidents occurred. 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A). Pursuant to its federal statutory authority, KAPS requests the following information:

1. For any part of the school years 2002-2003 and 2003-2004, the number of students served by the school district who, pursuant to an individualized education program (IEP), did not attend classes in district facilities during the day.
2. For any part of the school year 2004-2005, the number of students who, pursuant to an IEP, are expected not to receive instruction in district facilities.
3. The length of time the students represented by the answers to #1 and #2 were not attending class in district facilities or are not expected to attend class in district facilities.

**EXHIBIT A**

4. For the students not receiving instruction in district facilities, what arrangements were made for the students' education?
5. For every student identified by number 1 or 2:
   a. Student's name
   b. Name of student's guardian or parent
   c. Phone number of guardian or parent
   d. Address of guardian or parent

Before having access to a student's individual records, KAPS must first attempt to receive authorization from a parent or guardian. However, KAPS does not yet know the identity of the students who are not being instructed in district facilities. Therefore, the Wichita school district must provide KAPS with the identities of the students and the information necessary for KAPS to contact the students' guardians. This requirement is set out in the implementing regulations of the Developmental Disability Act, 45 C.F.R. § 1386.22(i):

> "If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities."

See also 42 C.F.R. § 51.43 (right to discover the name, address and phone number of the guardian of an individual with mental illness).

Please make this information available within three days, pursuant to the statute at 42 U.S.C. § 15043(a)(2)(J). In addition, if there will be a charge for copying, please call Kirk Lowry at (785)273-9661 extension 22 or Summer Duke at extension 17 for authorization.

Sincerely,

Rocky Nichols
Executive Director,
Kansas Advocacy & Protective Services

Cc: Winston Brooks
Superintendent
Wichita Public Schools
201 N. Water
Wichita, KS 67202

Diane Gjerstad
Governmental Relations Director
Wichita Public Schools
201 N. Water
Wichita, KS 67202



# WICHITA
## PUBLIC SCHOOLS

*Division of Special Education/
Support Services*

May 25, 2004

**VIA FACSIMILE: (785) 273-9414**

Mr. Rocky Nichols
Executive Director
Kansas Advocacy & Protective Services
3745 SW Wanamaker Road
Topeka, KS 66610

Re:   *Your letter of May 20, 2004*

Dear Mr. Nichols:

I have reviewed your letter of May 20, 2004, requesting statistical information regarding U.S.D. No. 259 students receiving homebound instruction. Without admitting KAPS' authority to act under the provisions cited as they pertain to this particular matter, we have in good faith endeavored to provide the information requested in questions 1 through 4 of your letter as contained below. However, due to the confidentiality requirements of the Family Education Rights and Privacy Act ("FERPA'), imposing upon us the duty to prevent disclosure of personally identifiable information regarding the records or instruction received by individual students, we are unable to respond to question 5 of your letter. Our responses are as follows:

1.   **For any part of the school years 2002-2003 and 2003-2004, the number of students served by the school district who, pursuant to an individualized education program (IEP), did not attend classes in district facilities during the day.**

RESPONSE: During the course of the 2002-2003 school year, a total of 50 students were served through homebound instruction. During the 2003-2004 school year, a total of 61 students have been served through homebound instruction.

**EXHIBIT B**

---

Alvin E. Morris Administrative Center   •   201 North Water   •   Wichita, Kansas 67202-1292   •   Fax: (316) 973-4492

page 2

2. For any part of the school year 2004-2005, the number of students who, pursuant to an IEP, are expected not to receive instruction in district facilities.

> RESPONSE: Although we have no way of knowing how many students will require homebound services during the next school year, we would estimate that there will be a total of at least 50 students based upon the past two years' usage.

3. The length of time the students represented by the answers to #1 and #2 were not attending class in district facilities or are not expected to attend class in district facilities.

> RESPONSE: The length of time that the students received homebound services varies greatly, from as few as two days to as much as the entire school year. Again, we have no way of knowing how many days will be required for students next year. For the 2002-2003 school year, only 12 of 50 students received homebound instruction for more than 90 school days. During the 2003-2004 school year, only 22 of 61 students received homebound instruction for more than 90 school days.

4. For the students not receiving instruction in district facilities, what arrangements were made for the students' education?

> RESPONSE: The students discussed above received homebound instruction. The amount of time received varies, depending upon the individual student's needs.

5. For every student identified by number 1 or 2:

   a. Student's name
   b. Name of student's guardian or parent
   c. Phone number of guardian or parent
   d. Address of guardian or parent

> RESPONSE: The District is required to comply with FERPA, which prohibits the release of information from student education records without consent. There are a few

*page 3*

exceptions to this general rule; however, KAPS does not meet any of those exceptions. Because you have asked for the names of students who are on IEPs, and their contact information, the release of that information would identify them as special education students. Such an identification would constitute the release of information contained in education records without consent. As a result, we cannot provide you with that information without violating FERPA.

If you have specific concerns, we would certainly be willing to schedule a time to discuss them with you.

Sincerely,

Neil Guthrie
Division Director
Special Education/Support Services

cc:   Winston Brooks, Superintendent of Schools
      Diane Gjerstad, Governmental Relations Director



**KANSAS ADVOCACY & PROTECTIVE SERVICES, INC.**
Rocky Nichols, Executive Director
3745 SW Wanamaker Road
Topeka KS 66610
(785) 273-9661
(785) 273-9414 Fax
(877) 776-1541 Toll Free TDD/Voice
Web site: www.ksadv.org
e-mail: rocky@ksadv.org

June 17, 2004

Neil Guthrie
Division Director
Special Education/Support Services
201 North Water
Wichita, KS 67202-1292

VIA FAX and Mail – 316-973-4492 (fax)

Dear Mr. Guthrie,

Thank you for your recent and prompt response to my letter of May 20, 2004.

We have reviewed your answers to our queries and are compelled by our federal mandate to advocate on behalf of persons with disabilities to delve further into the homebound instruction of those students receiving homebound services for more than 90 days.

To aid us in our federally mandated advocacy efforts, please supply the following information for the 22 individuals receiving homebound instruction in excess of 90 days in the 2003-2004 school year. Please provide this information for each individual student. You do not have to provide the student's name. You can use a number. For example, you would report back each of these answers for student #1, followed by student #2's answers, and so on, through student #22.

We are asking these detailed questions because we want to get a full and more complete understanding of the characteristics of the students on homebound services in your school district.

**Survey Questions, Student-by-Student:**
1) Date of birth for each student

2) Grade level for each student

3) Race for each student

4) Language spoken in the home for each student

5) Primary disability for each student

1

EXHIBIT
C

6) Secondary disabilities for each student

7) Cognitive level of functioning for each student

8) Supplemental and related services for each student

9) Nonacademic and extracurricular services and activities for each student

10) Physical education provided to each student

11) Assistive technology for each student

12) Extended school year for each student

13) Transition plan for each student

14) Transportation services for each student

15) Date of last IEP meeting and name and position of all persons present for each student (family members can be identified by relationship to student and not by name, student can be identified as 'student')

16) Description of supplementary aids and services that were provided to support the student in the regular education environment prior to the student's removal from that setting and why they proved to be unsuccessful

17) Date of last comprehensive evaluation for each student

18) Date of last vision screening for each student

19) Date of last hearing screening for each student

20) Hours of homebound services received each week for each student

21) Qualifications of person providing services for each student (if certified teacher, signify whether the teacher is certified in special education and the area of exceptionality)

22) Setting in which homebound services are delivered for each student (family home can be identified as 'family home')

23) Percentage of time spent in core curriculum for each student: math, science, language arts, and social studies.

24) Does student have a behavior intervention plan? If so, what is the most recent date of the student's functional behavior assessment and the behavior intervention plan?

25) Is homebound instruction for each student a result of suspension or expulsion?

In addition to the information for the individual students, we also require the following information regarding district policies:

- Is there a policy establishing a minimum or maximum number of homebound instructional hours per student? If so, please provide us a copy of this policy. If not, please provide what training, instruction and directives you provide to school employees to help them decide the number of hours of homebound instruction are provided.

- Please provide us with memos, staff meeting minutes, and other district information that establishes directives and procedures to district staff regarding provision of homebound services.

We appreciate your prompt response. Please contact us for further clarification if required. If I am not available, please ask for Kirk Lowry, Kathleen Wilson of Julia Gilmore Gaughan at KAPS.

Sincerely,

Rocky Nichols

3



**HINKLE ELKOURI**
LAW FIRM L.L.C.

Reply to Downtown Office
Thomas R. Powell
Direct Line: (316) 660-6206
Direct Fax: (316) 264-1556
tpowell@hinklaw.com

August 10, 2004

**VIA FAX (785) 273-9414**
**& FIRST CLASS MAIL**

Kirk Lowry
Kansas Advocacy & Protective Services
3745 SW Wanamaker Road
Topeka, Kansas 66610

Re:   Request for Information on Homebound Students

Dear Mr. Lowry:

We have reviewed the letter from Rocky Nichols, dated June 17, 2004, to Neil Guthrie, which requested information on twenty-five (25) specific areas for special education students who received homebound services for more than ninety (90) days. Mr. Nichols indicated that U.S.D. 259 could respond by using a number instead of student names. Presumably, Mr. Nichols believed this would solve the issue regarding the prohibition of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, on disclosure of personally identifiable information from student education records. The purpose of this letter is to advise you that U.S.D. 259 cannot provide the specific information requested by Mr. Nichols.

Pursuant to FERPA and its implementing regulations, "personally identifiable information" is defined as (a) the student's name; (b) the name of the student's parent or other family member; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number or student number; (e) a list of personal characteristics that would make the student's identity easily traceable; or (f) other information that would make the student's identity easily traceable. 34 C.F.R. § 99.3. The information requested by Mr. Nichols included such items as date of birth, grade level, race, student's disabilities, date of last IEP meeting and name and position of all persons present at the meeting. Clearly, when all such information is considered together it would qualify as "a list of personal characteristics that would make the student's identity easily traceable" or "other information that would make the student's identity easily traceable." Therefore, we are of the opinion that disclosure of this information would violate FERPA.

In addition, such information is also protected by the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1417(c). By providing you with the requested information, U.S.D. 259 would be providing a list of characteristics that would identify a student as one receiving special education services, as well as the specifics regarding the student's disabilities and services received. As a result, IDEA and its implementing regulations also prevents disclosure of the requested information.

**EXHIBIT D**

Downtown Office 2000 Epic Center • 301 North Main Street • Wichita, KS 67202-4820 • (316) 267-2000 • Fax
East Office 1223 North Rock Road • Bldg. I, Suite 200 • Wichita, KS 67206-1272 • (316) 267-2000 • Fax (316
www.hinklaw.com

Kirk Lowry
August 10, 2004
Page 2

As you may be aware, FERPA contains penalties that may be imposed upon school districts for violations of confidentiality. Chief among these penalties is the ability to revoke all federal funding. During the past school year, U.S.D. 259 received in excess of $57 million in federal funding. U.S.D. 259 cannot and will not risk violating the rights of its disabled students and the loss of its federal funding.

For all of the reasons set forth above, U.S.D. 259 will not be providing the information requested by Mr. Nichols.

Very truly yours,

HINKLE ELKOURI LAW FIRM L.L.C.

Thomas R. Powell

TRP/bsw
cc:  Neil Guthrie