FILED

**UNITED STATES COURT OF APPEALS** U.S. DISTRICT COURT
DISTRICT OF KANSAS

**FOR THE TENTH CIRCUIT**

'07 JUL 19 AM 10 :35

UNIFIED SCHOOL DISTRICT NO. 259,
Sedgwick County, State of Kansas,

      Plaintiff - Appellant,

    v.

DISABILITY RIGHTS CENTER OF
KANSAS (DRC),

      Defendant - Appellee.

-------------------------

KANSAS ASSOCIATION OF SCHOOL
BOARDS; NATIONAL SCHOOL
BOARDS ASSOCIATION,

      Amici Curiae.

CLERK, U.S. DISTRICT COURT
BY
AT WICHITA, KS

No. 06-3057
(D.C. No. 04-CV-1279-JTM)

A true copy
Teste
Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit
By
Deputy Clerk

JUDGMENT

Filed June 25, 2007

Before **TACHA**, Chief Circuit Judge, **EBEL**, Circuit Judge, and **KANE**,[*] District Judge.

This case originated in the District of Kansas and was argued by counsel.

_____

    [*]Honorable John L. Kane, Jr., Senior Circuit Judge for the District of Colorado, sitting by designation.

It is the judgment of the court that the appeal is dismissed.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by:
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**June 25, 2007**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNIFIED SCHOOL DISTRICT NO.
259, Sedgwick County, Kansas,

     Plaintiff-Appellant,

v.

DISABILITY RIGHTS CENTER OF
KANSAS, (DRC),

     Defendant-Appellee.

No. 06-3057

---

KANSAS ASSOCIATION OF
SCHOOL BOARDS AND NATIONAL
SCHOOL BOARD ASSOCIATION,

     Amici Curiae.

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 04-CV-1279-JTM)**

---

Sarah J. Loquist (Thomas R. Powell and Roger M. Theis, with her on the briefs), Hinkle Elkouri Law Firm, LLC, Wichita, Kansas for Plaintiff-Appellant.

Kirk W. Lowry, Disability Rights Center of Kansas, Topeka, Kansas (Summer A. Duke, Disability Rights Center, Topeka, Kansas with him on the brief), for Defendant-Appellee.

Cynthia Lutz Kelly, Kansas Association of School Boards, Topeka, Kansas, filed an amici curiae brief in support of Unified School District No. 259 on behalf of amici curiae Kansas Association of School Boards and National School Board Association.

Before **TACHA**, Chief Circuit Judge, **EBEL**, Circuit Judge, and **KANE**,* District Judge.

**EBEL**, Circuit Judge.

This case involves a dispute about access to student records between a school district and a protection and advocacy ("P&A") agency. A P&A agency is an entity designated by the state to investigate abuse and neglect among individuals with disabilities, and through that designation it receives federal funding to provide protection and advocacy services. The school district asks us to resolve the tension between federal law that authorizes a P&A agency to have access to individuals' records in certain situations and a separate federal statute that penalizes school districts for unauthorized releases of student records. However, after the school district filed suit seeking a declaratory judgment to affirm its authority not to disclose the contested records, the P&A agency withdrew its request for the records. The district court concluded that, with no pending records request, the factual basis for the dispute has disappeared and rendered this case moot. We agree. Accordingly, we DISMISS this appeal for lack of jurisdiction.

---

*Honorable John L. Kane, Jr., Senior District Court Judge for the District of Colorado, sitting by designation.

## I

The mother of a disabled student served by the Plaintiff-Appellant, Unified School District No. 259 ("USD 259") in Kansas, contacted Kansas's designated P&A agency, the Defendant-Appellee Disability Rights Center ("DRC"), to complain about USD 259's services. The student was seventeen years old and had neurofibromatosis, a condition manifested by tumors on the nerves in the face, neck and spine. According to DRC, "she had never received a public education at school. She was homebound, on a doctor's order, for all of her 17 years." The mother complained to DRC about the relatively small quantity of homebound instruction provided by USD 259's special education program. DRC began representing this student in a due process action, based on the disparity between the one to three hours of instruction per week in the student's homebound placement, and most students' approximately thirty hours of instruction in school.

Meanwhile, DRC began investigating whether USD 259 systemically denied educational services to disabled students in homebound placements. In a letter dated May 20, 2004, DRC requested information from USD 259 about students who, pursuant to an individualized education program ("IEP"), did not attend classes in district facilities. DRC cited its "probable cause" investigative authority under the federal Developmental Disabilities Assistance and Bill of Rights Act ("DDA"), 42 U.S.C. §§ 15041-15045, and Protection and Advocacy

for Individuals with Mental Illness Act ("PAIMIA"), 42 U.S.C. §§ 10801 et seq. However, the DRC did not assert that it had probable cause to believe that these students had been subjected to abuse or neglect.

In the May 20, 2004, letter, DRC sought the identities of the students and the information necessary to contact their parents for their authorization to access the students' records. USD 259 replied several days later by providing cumulative figures about students who, pursuant to an IEP, did not attend class in district facilities during the day and were being "served through homebound instruction." USD 259 then stated that, pursuant to the federal Family Educational Rights and Privacy Act ("FERPA"), it could not release information from students' educational records – including the identity of students receiving special education services – without the consent of their parents or legal guardians.

DRC sent another letter to USD 259 on June 17, 2004, withdrawing its request for the students' names. Instead, DRC requested other details about each of the twenty-two students receiving homebound instruction, covering more than twenty categories of information. The data requested for each student included: date of birth; grade level; race; disabilities; cognitive level of functioning; supplemental and related services; physical education provided; transition plan; transportation services; date of last IEP meeting; date of last comprehensive evaluation for each student; hours of homebound services received each week;

- 4 -

qualifications of persons providing services for each student; and percentage of time spent in core curriculum for each student in math, science, language arts and social studies. DRC stated that it was "asking these detailed questions because we want to get a full and more complete understanding of the characteristics of the students on homebound services in your school district."

In a letter dated August 10, 2004, USD 259 declined to provide the information. USD 259 stated that releasing the data requested would violate FERPA, because the information in the aggregate would make it relatively easy to identify each student. USD 259 noted that penalties for FERPA violations by school districts include revocation of all federal funding, and estimated this could total more than $57 million annually for USD 259.

USD 259 then filed a declaratory judgment action against DRC, asking that the U.S. District Court for the District of Kansas find that the DDA, PAIMI, and the Protection and Advocacy for Individual Rights Act "are not applicable to public schools" and to find that FERPA and the Individuals with Disabilities Education Act ("IDEA") "prohibit[] the release of the information requested."

During cross-motions for summary judgment, DRC filed a reply withdrawing its request for homebound students' records and guardian information.[1] DRC argued in its reply that while the "narrow issue of requests for

---

[1] In withdrawing the request, DRC noted that the due process action that had precipitated the inquiry into homebound instruction had been settled and
(continued...)

- 5 -

homebound information is moot," "the broad issue" of P&A agency access to public school records "is not moot."

However, the District Court dismissed USD 259's complaint as moot. Unified Sch. Dist. No. 259 v. Kan. Advocacy & Protective Servs., Inc., No. 04-1279-JTM (D. Kan. Jan. 11, 2006). Specifically, the court concluded that DRC's withdrawal of the record request "effectively deprives the court of the factual basis for issuing an order" and "any substantive ruling would be considered advisory." USD 259 timely appealed from this order.

## II

Although we have jurisdiction of appeals from all final decisions of federal district courts, 28 U.S.C. § 1291, we have no subject matter jurisdiction over a case if it is moot. "Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." Seneca-Cayuga Tribe v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1028 (10th Cir. 2003) (quotation, alteration omitted). We review de novo the question of whether a case is moot. Prier v. Steed, 456 F.3d 1209, 1212 (10th Cir. 2006).

Actions seeking a declaratory judgment "must comport with the same mootness principles as any other suit." Id. at 1213. "It is well established that

---

[1](...continued)
subsequently dismissed with prejudice.

what makes a declaratory judgment action 'a proper judicial resolution of a "case or controversy" rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'" Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994) (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987) (alteration omitted)).  "The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000) (quotation omitted).

The issue then is whether DRC's voluntary withdrawal of the contested records request moots this dispute, or whether its contention that it continues to have a right to such student records creates a case or controversy over which we can exercise jurisdiction. "[T]his court has explained that a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." Cox, 43 F.3d at 1348 (quotation, alteration omitted).  USD 259 argues that the case is not moot, because DRC's position makes it likely that DRC will make similar requests for student records in the future.

"An exception to the mootness doctrine exists when cases are capable of repetition, yet evading review." Disability Law Ctr. v. Millcreek Health Ctr., 428 F.3d 992, 996 (10th Cir. 2005) (quotation omitted).  For a case to dodge dismissal for mootness under the "capable of repetition, yet evading review" exception,

-7-

"two prerequisites must be satisfied: (1) the duration of the challenged action must be too short to be fully litigated prior to its cessation or expiration; and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Hain v. Mullin, 327 F.3d 1177, 1180 (10th Cir. 2003) (en banc) (citing United States v. Seminole Nation, 321 F.3d 939, 943 (10th Cir. 2002)).

We held that a dispute over the temporary orders of the National Indian Gaming Commission ("NIGC") closing certain gaming facilities of the Seminole Nation of Oklahoma was not moot, even though those orders had been superceded by a permanent closure order that was being litigated separately. Seminole Nation, 321 F.3d at 943. We observed that the first prerequisite to the mootness exception was met because "[t]emporary closure orders, by their very nature, are short in duration," since federal law "requires the NIGC to quickly review temporary closure orders and either dissolve them or issue permanent closure orders." Id. We also noted that the second prerequisite was met because "there [wa]s a reasonable expectation that the Nation w[ould] again challenge the NIGC Chairman's authority to issue temporary closure orders that apply to all the Nation's gaming facilities." Id. at 944. We concluded that the appeal fit "the exception to mootness for conduct capable of repetition, yet evading review." Id.

In contrast, we concluded that when the legality of hypothetical future conduct depends on the "specific context and content" of the disputed action, a

- 8 -

declaratory judgment action fails to meet the "capable of repetition" prong of the exception to mootness.  O'Connor v. Washburn Univ., 416 F.3d 1216, 1222 (10th Cir. 2005).  In a First Amendment case contesting the presence on campus of a particular statue that had been removed during the litigation, we held that the request for prospective relief was moot.  "Although it is conceivable that the university could bring some other religiously themed statue onto campus as part of a future sculpture exhibition, this court cannot resolve the constitutionality of a hypothetical future statue given that Establishment Clause questions are heavily dependent on the specific context and content of the display."  Id.

In addition, we declared a matter moot when the P&A agency for Utah withdrew its requests for the records of a patient at a particular health facility after the patient had been moved out of state, because future records requests would not necessarily "evade review."  We concluded that the P&A agency's challenge of a facility's refusal to release the requested records "does not present an issue with an inherent time limit such that it would necessarily evade review in future litigation.  Unlike a pregnancy or a temporary order, a care facility's refusal to release a patient's medical records could last indefinitely."  Disability Law Ctr., 428 F.3d at 997.  Moreover, the P&A agency's "need for speedy access to records" was not enough to trigger the "evading review" prong of the exception to mootness.  Id.  "If in a future dispute [the P&A agency] is concerned its case

-9-

will become moot because events are moving too quickly, it can request expedited review." Id.

In the matter at bar, DRC withdrew its request for records eleven months after USD 259 filed its action for a declaratory judgment, and waited until fairly late in the summary judgment stage of litigation to announce its withdrawal. DRC argues now that the case is moot because DRC withdrew its request, it is unlikely to reinstate this particular request, and has no records requests pending before USD 259. DRC suggests that in withdrawing its request it recognized that "the amount of homebound services offered to students with disabilities could not be addressed effectively as a systemic issue." DRC states that "there is no reason to believe DRC will again assert its access authority under the P&A Acts to obtain the same information about the same students from the same school district." DRC concedes, however, that it "may request student records again in the future," although such request would "be based on a different set of facts."

USD 259's desire for a declaratory judgment establishing its right to withhold records from DRC in the future is not sufficient to overcome mootness, even if we were to conclude that DRC is likely to request student records from USD 259 again. As we determined in Disability Law Center, the "refusal to release . . . records could last indefinitely," 428 F.3d at 997. The fact that USD 259 is seeking a declaratory judgment does not change the conclusion that the "duration of the challenged action" is not "too short to be fully litigated prior to

-10-

its cessation or expiration," <u>Hain</u>, 327 F.3d at 1180, because the relevant duration is measured by USD 259's refusal to release the student records.

Nor does USD 259 face an inherent time limit under federal law to relinquish student records. Although FERPA provides that a school district that improperly <u>releases</u> student records may lose its federal funding, neither party points to any possibility of a penalty against USD 259 for improperly <u>withholding</u> such records. In fact, FERPA gives USD 259 a safe harbor in that a refusal to release records on the grounds of student privacy cannot jeopardize a school's federal funding.[2] As such, USD 259's refusal to provide student information pursuant to a future request for records is the type of matter that can be "fully litigated" in the normal course of events, and, if unique circumstances demand a faster resolution, the parties can request expedited review.

Likewise, there is no "reasonable expectation" that USD 259 "will be subjected to the <u>same</u> action again." <u>Hain</u>, 327 F.3d at 1180 (emphasis added). DRC has suggested that it would not seek again information about <u>all</u> homebound students because it determined that addressing homebound services on an aggregate basis would not be effective. Moreover, DRC's authority to access

---

[2] FERPA provides that "refusal of a . . . local educational agency . . . to provide personally identifiable data on students or their families . . . to any . . . third party, on the grounds that it constitutes a violation of the right to privacy and confidentiality of students or their parents, shall not constitute sufficient grounds for the suspension or termination of Federal assistance." 20 U.S.C. § 1232i(a).

student records – and USD 259's obligation to release requested records – depends on the specific facts underlying the request for records, so separate requests for different types of student information in different contexts cannot be considered the "same action."  For example, a P&A agency's authority under the federal DDA to access records depends on the status of the individual's legal guardianship, whether a complaint has been received, or whether "as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect."  42 U.S.C. § 15043(a)(2)(I). State law provides certain authority to the designated P&A agency as well.  See Kan. Stat. Ann. § 74-5515 (setting forth records access provisions for alleged incidents of abuse and neglect).  Therefore, the legitimacy of a hypothetical request for records will be "heavily dependent on the specific context and content" of the facts asserted in the request.  O'Connor, 416 F.3d at 1222.

USD 259 argues that DRC's withdrawal of its record request is merely the "voluntary cessation" of wrongful conduct that should not necessarily defeat jurisdiction.  The rule that "voluntary cessation of a challenged practice rarely moots a federal case . . . traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001) (citations omitted).  "A request for prospective relief can be mooted by a defendant's voluntary compliance if the defendant meets the

'formidable burden' of demonstrating that it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" <u>Tandy v. City of Wichita</u>, 380 F.3d 1277, 1291 (10th Cir. 2004) (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 190 (2000)). "Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct." <u>Id.</u> (citing <u>Laidlaw</u>, 528 U.S. at 190).

Because DRC continues to assert that it has authority to request and access student information from USD 259, USD 259 contends that DRC has not met its burden of demonstrating that future records requests are unlikely to recur. We can envision circumstances in which a P&A agency's repeated and similar requests for student records would fall within the voluntary cessation doctrine, particularly if accompanied by legal threats seeking to compel release of the records. We have held that a declaratory judgment is not mooted simply by the defendant's stated rescission of a compelling action when the defendant retains the ability to reinstitute that action against the plaintiff. <u>See, e.g., ARW Exploration Corp. v. Aguirre</u>, 947 F.2d 450, 453 (10th Cir. 1991) (holding a declaratory judgment action remained live where the defendants had neither dismissed with prejudice their arbitration claims against the plaintiff nor filed an amended complaint to eliminate the disputed claims). But in this case, DRC

- 13 -

currently wields no weapon against USD 259, making the "possibility of recurrence" merely "theoretical." O'Connor, 416 F.3d at 1222.

More importantly, we already have observed that the "allegedly wrongful behavior" in this case is highly fact- and context-specific, rather than conduct that is likely to "recur" on similar facts and in the same context. In such a case, the "voluntary cessation" doctrine is inapplicable, because our review of future instances of "wrongful behavior" may be quite different than the complained-of example that already has ceased.

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." N.M. Env't Dep't v. Foulston (In re L.F. Jennings Oil Co.), 4 F.3d 887, 889 (10th Cir. 1993) (quotation omitted). It would have no "effect in the real world," Citizens for Responsible Gov't, 236 F.3d at 1182, and essentially be "an advisory opinion," Cox, 43 F.3d at 1348, were we to adopt USD 259's position that FERPA and IDEA prevent the type of disclosure requested by DRC, because USD 259 does not need any relief. DRC currently does not burden USD 259 with any requests for student information, nor is USD 259 threatened with any adverse action based on its denials of such requests. DRC's future requests for information will not "evad[e] review," because "[w]e expect that [USD 259] will have ample opportunity to contest this issue in each case where it arises." N.M. Env't Dep't, 4 F.3d at 889.

This appeal is DISMISSED as moot.

- 14 -